# STATE OF MICHIGAN

# COURT OF APPEALS

MARJORIE R BROWN TRUST,

        Plaintiff-Appellant,

V

MORGAN STANLEY SMITH BARNEY, LLC,
CITIGROUP GLOBAL MARKETS, INC, AND
RICHARD C. RESS,

        Defendants-Appellees.

UNPUBLISHED
February 5, 2015

No. 317993
Oakland Circuit Court
LC No. 2011-120248-CZ

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals the trial court's grant of summary disposition to defendants under MCR 2.116(C)(7). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY[1]

## A. FACTS

The main issue in this case is whether a dispute over an investment account must be subject to arbitration, as specified in the account agreement, or whether the dispute can proceed in the Michigan judicial system.

Plaintiff opened an individual investment account with Smith Barney Shearson in 1982, and converted it to a trust account in 1997. Plaintiff's investments consisted almost entirely of a single corporate stock, and her investment objectives were conservative—safe appreciation of the account's value, and safe maintenance of the modest income the stock provided.

---

[1] Further procedural background on this case can be found in our Court's earlier opinion on this case, *Marjorie Brown v Morgan Stanley Smith Barney*, unpublished opinion per curiam of the Court of Appeals, entered February 19, 2013 (Docket No. 307849), pp 1–3.

-1-

In 2004, defendant Richard Ress became plaintiff's stockbroker. Plaintiff alleged that Ress suggested she change her investment strategy in early 2007, which resulted in plaintiff trading her corporate stock for shares in a capital fund. The capital fund sustained large losses during the financial crisis, and the value of plaintiff's holdings declined considerably.

## B. THE 2011 SUIT AND APPEAL

Plaintiff brought suit against defendants in 2011 in the Oakland Circuit Court, and alleged, among other things, that Ress committed fraud and material misrepresentation when he shifted her assets into the capital fund, and that all defendants breached their fiduciary duties. Defendants' counsel contacted plaintiff's attorney, and informed the attorney that the dispute was governed by an arbitration agreement plaintiff signed when she opened her account in 1982. Defendant's counsel further stated that they would not file a response to plaintiff's complaint while plaintiff's attorney reviewed the arbitration agreements. Despite these communications, plaintiff moved for a default judgment against Ress.

Defendants opposed the default judgment, and argued that: (1) plaintiff's account was subject to an arbitration agreement; (2) plaintiff's counsel knew of the arbitration agreement through communications with defendants' attorneys, and yet still filed a motion for default judgment against Ress; and (3) Ress had a meritorious defense to the underlying claims of the lawsuit, in the form of an affidavit denying plaintiff's allegations against him. Accordingly, defendants subsequently filed a motion for summary disposition under MCR 2.116(C)(7), and stated that the arbitration agreement required that the dispute be arbitrated, not litigated in the Michigan judicial system.

In response, plaintiff admitted that her account with Smith Barney Shearson was subject to an arbitration agreement, but asserted that defendants Morgan Stanley Smith Barney and Citigroup Global Markets were not valid successors to Smith Barney Shearson, and, as such, were not parties to the arbitration agreement. To counter plaintiff's claims, defendants produced evidence that Morgan Stanley Smith Barney and Citigroup Global Markets were the legal successors of Smith Barney Shearson, through a series of consolidations that took place over three decades.[2]

After a hearing in November 2011, the trial court held that: (1) there was good cause to set aside the default entered against Ress because the parties were in contact with one another about the arbitration agreement, and Ress had a meritorious defense in the form of his affidavit; and (2) the arbitration agreement applied to the dispute. The trial court then granted defendants' motion for summary disposition under MCR 2.116(C)(7).

Plaintiff appealed the case to our Court, and again argued that the arbitration agreement did not apply to defendants, because they were not legal successors of Smith Barney Shearson.

---

[2] Specifically, defendants provided a one-page FINRA printout on broker-dealers that did business under the name "Smith Barney" or were affiliated with a broker-dealer named "Smith Barney."

Our Court did not rule on the substantive issues of the dispute, but remanded the case to the trial court in 2013, and instructed it to: (1) explain why it held that defendants Morgan Stanley Smith Barney and Citigroup Global Markets were the legal successors to Smith Barney Shearson, or further develop the record to demonstrate the successor relationship; and (2) explain why it held that Ress had a meritorious defense to the lawsuit in connection with the motion to default, or further develop the record on this issue.[3]

## C. THE 2013 REMAND AND INSTANT APPEAL

Upon remand to the Oakland Circuit Court, defendants again filed a motion for summary disposition under MCR 2.116(C)(7). They provided further evidence demonstrating that defendants Morgan Stanley Smith Barney and Citigroup Global Markets are the legal successors to Smith Barney Shearson, in the form of an affidavit from Morgan Stanley Smith Barney's in-house counsel, which recounted the chain of succession and corporate ownership of the financial institutions. Defendants also noted that they still held plaintiff's brokerage account—which demonstrated that defendants are the successors to Smith Barney Shearson, where plaintiff opened her account in 1982. Further, defendants provided a new, more specific affidavit from Ress that detailed the factual basis of his defenses to plaintiff's allegations against him.

Plaintiff again argued that defendants did not show they were legal successors to Smith Barney Shearson, because they were not the *immediate* successors to Smith Barney Shearson. She also asked the court to deny defendants' motion to set aside the default against Ress, because Ress' affidavit did not constitute a meritorious defense to her allegations against him.

After a motion hearing, the trial court issued a thorough written opinion in August 2013. It again held that: (1) there was good cause to set aside the default entered against Ress because the parties were in contact with one another about the arbitration agreement, and Ress had a meritorious defense to plaintiff's allegations in the form of his expanded affidavit; and (2) the arbitration agreement applied to the dispute because defendants were the legal successors to Smith Barney Shearson. In compliance with our Court's 2013 opinion, the trial court specifically outlined the points in Ress' expanded affidavit that provided him with a meritorious defense, and detailed the long chain of consolidations and reorganizations that resulted in Smith Barney Shearson's reconstitution into defendants Morgan Stanley Smith Barney and Citigroup Global Markets. Accordingly, the trial court granted defendants' motion for summary disposition under MCR 2.116(C)(7).

Plaintiff has once again appealed the trial court's ruling to our Court, and makes the same arguments on appeal as it did in the motion proceedings. Defendants ask us to affirm the ruling of the trial court.

## II. STANDARD OF REVIEW

---

[3] *Marjorie Brown v Morgan Stanley Smith Barney*, unpublished opinion per curiam of the Court of Appeals, entered February 19, 2013 (Docket No. 307849), pp 5–7.

A trial court's decision on a motion for summary disposition is reviewed de novo. *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). Summary disposition is proper under MCR 2.116(C)(7) when the parties have previously signed an agreement to arbitrate a dispute. When reviewing a motion for summary disposition under MCR 2.116(C)(7), we look to "the affidavits, pleadings, and other documentary evidence presented by the parties," and "accept . . . the plaintiff's well-pleaded allegations, except those contradicted by documentary evidence, as true." *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010).

A trial court's decision on whether to set aside a default is reviewed for an abuse of discretion. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). "The determination that a trial court abused its discretion involves far more than a difference in judicial opinion." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Huntington Nat'l Bank*, 292 Mich App at 383.

## III. ANALYSIS

### A. LEGAL SUCCESSION AND THE ARBITRATION AGREEMENT

Importantly, plaintiff has admitted that she is bound by an arbitration agreement she signed with Smith Barney Shearson when she opened her account in 1982. However, she claims that defendants cannot enforce this arbitration agreement because they are not the legal successors to Smith Barney Shearson. Accordingly, if defendants Morgan Stanley Smith Barney and Citigroup Global Markets *are* the legal successors to Smith Barney Shearson, plaintiff is bound by the arbitration agreement she signed with Smith Barney Shearson. We first address the issue of legal succession, and then determine whether plaintiff is bound by the arbitration agreement.

### 1. LEGAL SUCCESSION

"It is a fundamental principle of corporation law that although a merged corporation ceases to exist, in the absence of a specific provision to the contrary, all property, rights, and privileges of the corporation continue as the property of the surviving entity." *Delaware Ins Guaranty Ass'n v Christiana Care Health Servs, Inc*, 892 A2d 1073, 1077–1078 (Del 2006).[4] Accordingly, in general, the "successor in interest" to a corporation "follows in ownership or control of property retaining the same rights as the original owner, with no change in substance." *Id*. at 1077. "The rights and obligations of corporate entities can thus be passed on to successor entities through merger or other changes in corporate form." *In re Federal-Mogul Global, Inc*,

---

[4] "Cases from foreign jurisdictions are not binding, but can be persuasive." *Holton v Ward*, 303 Mich App 718, 727 n 11; 847 NW2d 1 (2014). See also *Mansfield, Coldwater & Lake Michigan R Co v Drinker*, 30 Mich 124, 127 (COOLEY, J.) ("[t]o acquire the rights [of a predecessor corporation], the [successor corporation] must have obtained it by assignment, or it must show its right by succession under a consolidation").

411 BR 148, 164 (D Del, 2008), citing 1 Blackstone, Commentaries on the Laws of England, p *455.

Here, defendants have provided substantial evidence[5]—which plaintiff does not contest—that Morgan Stanley Smith Barney and Citigroup Global Markets are the legal successors to Smith Barney Shearson. Plaintiff's only argument to the contrary is the incorrect assertion, based on a dictionary definition of "successor corporation," that a legal successor to a formerly existing corporation must be the *immediate* successor to the formerly existing corporation. Plaintiff offers no legal support for this unsupported and illogical assertion, and it is not our responsibility to provide legal support for her argument.[6]

In any event, plaintiff's argument, such as it is, is wrong, because legal succession in corporate law is not limited to the immediate corporate successor—as noted, "the rights and obligations of corporate entities can . . . be passed on to successor entities through merger or other changes in corporate form." *In re Federal-Mogul Global*, 411 BR at 164. Plaintiff's assertions are also belied by the fact that her brokerage account is still held by defendants, which is dispositive that defendants are the legal successors to Smith Barney Shearson, where plaintiff opened her account.

Accordingly, the trial court correctly held that defendants Morgan Stanley Smith Barney and Citigroup Global Markets are the legal successors to Smith Barney Shearson.

## 2. ARBITRATION

The existence and enforceability of an arbitration agreement is reviewed de novo. *In re Nestorovski Estate*, 283 Mich App 177, 184; 769 NW2d 720 (2009). "Arbitration agreements are generally interpreted in the same manner as ordinary contracts. They must be enforced according to their terms to effectuate the intentions of the parties." *Oakland-Macomb Interceptor Drain Drainage Dist v Ric-Man Construction, Inc*, 304 Mich App 46, 55–56, 850 NW2d 498 (2014).

Here, as noted, plaintiff admits that she signed an agreement to arbitrate any disputes related to her brokerage account when she opened her account with Smith Barney Shearson in 1982. In relevant part, the agreement she signed reads:

6. Arbitration

---

[5] As the trial court noted, this evidence included the affidavit of Morgan Stanley Smith Barney's corporate counsel, and numerous court decisions recognizing that defendants are the legal successors to Smith Barney Shearson. The affidavit exhaustively detailed defendants' corporate history, which eventually leads back to Smith Barney Shearson.

[6] "A party may not simply announce its position and leave it to this Court to discover and rationalize the basis for the party's claim." *Badiee v Brighton Area Sch*, 265 Mich App 343, 373; 695 NW2d 521 (2005).

• Arbitration is final and binding on the parties.

• The parties are waiving their right to seek remedies in court, including the right to jury trial.

* * *

I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB [Smith Barney Shearson] and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts . . . . .

Because defendants are the legal successors of Smith Barney Shearson, the agreement to arbitrate is binding on plaintiff, and plaintiff has "waived [her] right to seek remedies in court." The trial court thus rightly held that the arbitration agreement applies to this dispute, and properly granted defendants' motion for summary disposition under MCR 2.116(C)(7).

## B. MOTION TO SET ASIDE DEFAULT

A motion to set aside default may be granted when "good cause is shown and an affidavit of facts showing a meritorious defense is filed." MCR 2.603(D). To determine "whether a defendant has a meritorious defense," the trial court looks to whether the affidavit contains evidence that:

(1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;

(2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or

(3) the plaintiff's claim rests on evidence that is inadmissible. [*Shawl v Spence Bros*, 280 Mich App 213, 238; 760 NW2d 674 (2008).]

Here, plaintiff, under somewhat questionable circumstances, sought an entry of default against Ress, who did not respond to her complaint in a timely fashion. She argues that the trial court erred when it granted defendants' motion to set aside the default against Ress because Ress did not establish a meritorious defense.[7] However, as the trial court correctly observed, Ress established a meritorious defense in the form of his affidavit.

---

[7] Plaintiff does not argue that defendants lack good cause to set aside the default. As the trial court rightly observed, defendants showed good cause by demonstrating their communications

Plaintiff accused Ress of committing fraud, violating the Securities and Exchange Act and Michigan Uniform Securities Act, and breaching a contract and his fiduciary duties. In his affidavit, Ress specifically responded to each claim, and asserts that plaintiff cannot prove the required elements of her claims, because: (1) he recommended plaintiff invest in the capital fund because she requested that he diversify her investments; (2) plaintiff made the final decision to invest in the capital fund, and did so after consultation with her accountant and attorney; (3) he made no misrepresentations to plaintiff regarding the capital fund investment or any other investment; (4) he provided competent advice to plaintiff; and (5) he fulfilled his fiduciary obligations to her.

As such, Ress' affidavit contains evidence that plaintiff "cannot prove or [Ress] can disprove an element of the claim or a statutory requirement." *Shawl*, 280 Mich App at 238. The trial court thus correctly granted defendants' motion to set aside Ress' default under MCR 2.603(D).

## IV. CONCLUSION

In its commendable and thorough adjudication of this case, the trial court correctly held that: (1) defendants Morgan Stanley Smith Barney and Citigroup Global Markets are the legal successors to Smith Barney Shearson; (2) the arbitration agreement signed by plaintiff applies to this dispute; (3) the default against Ress should be set aside under MCR 2.603(D). Accordingly, the trial court rightly granted summary disposition to defendants under MCR 2.116(C)(7), and its order is affirmed.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

---

with plaintiff's attorney regarding the existence of the agreement to arbitrate *before* Ress was required to respond to plaintiff's complaint.