*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MURPHY-TELEGRAPH BUILDING, LLC,

      Plaintiff-Appellee,

v

DETROIT THERMAL, INC,

      Defendant-Appellant.

UNPUBLISHED
February 1, 2024

No. 364900
Wayne Circuit Court
LC No. 22-008171-NZ

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant, Detroit Thermal, LLC, appeals as of right the trial court's order denying defendant's motion to set aside the default judgment awarded to plaintiff, Murphy-Telegraph Building, LLC. We vacate the trial court's order and remand to the trial court for further proceedings.

## I. FACTS

Plaintiff owns property at 151 and 155 West Congress in Detroit, known as the "Murphy-Telegraph Building" (the building). Defendant owns and operates steam lines near the building; in 2015, defendant rebuilt approximately 120 feet of steam piping near the building.

On July 8, 2022, plaintiff initiated this lawsuit alleging that defendant's negligent operation of its steam piping caused steam to escape from the manhole covers and damage the building, and that the steam piping also significantly elevated the temperature of the building's basement wall, further damaging the building. In its complaint, plaintiff alleged in part that "the damage and negligent acts as set forth herein are ongoing, constantly occurring and recurring since Plaintiff has owned the buildings in question and started when Detroit Thermal made street repairs in 2015 and the occurrences and negligent acts and damages continue through today."

The parties do not dispute that plaintiff properly served defendant with the complaint by personal service to defendant's resident agent on July 19, 2022. Plaintiff also mailed a courtesy copy of the complaint to defendant's business address, and emailed a copy to defendant using the contacts information on defendant's business website. The trial court found that service of the summons and complaint was proper.

Defendant failed to answer the complaint. Plaintiff requested entry of a default on August 22, 2022, which was entered by the trial court clerk September 2, 2022. Plaintiff mailed a copy of the entered default to defendant's resident agent. On October 18, 2022, plaintiff moved for entry of a default judgment in the amount of $488,220, plus interest, costs, and attorney fees. The motion included as exhibits two reports regarding the condition of the building; one report concluded that damage to the building was caused by steam from the steam lines, while the other report concluded that no damage was caused by steam from the steam lines, but instead that any damage to the building was caused by environmental factors and lack of maintenance. In its motion, however, plaintiff incorrectly suggested that *both* reports concluded that damage to the building was caused by escaping steam.

The trial court held a hearing on the motion for default judgment on October 28, 2022. The record indicates that plaintiff properly served a notice of hearing upon defendant's resident agent. At the conclusion of the hearing, the trial court found that defendant had failed to respond to the complaint. The trial court also found adequate proof of damages and entered a judgment in favor of plaintiff in the amount of $488,595.

On November 21, 2022, defendant moved to set aside the default judgment. Attached to the motion was the affidavit of Todd Grzech, defendant's Chief Executive Officer (CEO), explaining that for the preceding year his attention had been focused on the sale of defendant's business, which resulted in him traveling extensively, that he was away from defendant's Detroit office throughout October 2022 for that reason, and that he did not learn of the lawsuit until October 21, 2022. According to his affidavit, Grzech "resolved to take care of it as soon as I returned to the office in early November," but "[b]efore I had the opportunity to contact legal counsel, I received notice on November 8, 2022 that a judgment had been entered," and thereafter contacted legal counsel.

The motion to set aside the default also was supported by a second affidavit of Todd Grzech asserting that defendant had a meritorious defense. Specifically, Grzech asserted that defendant did not cause the damage to the building and that "[a]ny damage Plaintiff has incurred, if any, was caused by the elements, natural aging of the Subject Property, and/or Plaintiff's failure to maintain the property." The affidavit also asserted that plaintiff had not demonstrated damages in the amount sought.

On January 27, 2023, the trial court held a hearing on the motion to set aside the default judgment, at the conclusion of which the trial court denied the motion. The trial court specifically found that service of the complaint and summons was proper, that defendant's CEO received the summons and complaint but did not "become aware" of it until October 21, 2022, after the period for timely responding to the complaint, and that defendant had not established good cause to set aside the judgment. The trial court further found that defendant failed to present a meritorious

defense that would warrant setting aside the default judgment, and that sufficient evidence was presented to support the damages awarded. Defendant now appeals.

## II. DISCUSSION

Defendant contends that the trial court erred by denying its motion to set aside the default judgment. We review a trial court's decision to grant or deny a motion to set aside a default judgment for an abuse of discretion. *Lawrence M. Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 272; 803 NW2d 151 (2011). A trial court abuses its discretion when its decision is outside the range of principled outcomes, *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019), and also when it makes an error of law, *In re Nikooyi*, 341 Mich App 490, 494; 991 NW2d 619 (2022). We review de novo the trial court's interpretation and application of court rules. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). We review for clear error the trial court's determination regarding the amount of damages awarded. *Jackson v Bulk AG Innovations, LLC*, 342 Mich App 19, 24; 993 NW2d 11 (2022).

Michigan's court rules confer upon the trial court the authority to enter a default and a default judgment. *Henry v Prusak*, 229 Mich App 162, 168; 582 NW2d 193 (1998). MCR 2.108(A)(1) provides that "[a] defendant must serve and file an answer or take other action permitted by law or these rules within 21 days after being served with the summons and a copy of the complaint in Michigan in the manner provided in MCR 2.105(A)(1)." MCR 2.603(A)(1) requires the trial court clerk to enter a default "[i]f a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules. . . ." *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 381; 808 NW2d 511 (2011).

In this case, the parties do not dispute that plaintiff properly served defendant with the complaint by personal service to defendant's resident agent. The parties also do not dispute that defendant failed to answer the complaint. Because defendant "failed to plead or otherwise defend as provided by these rules," MCR 2.603(A)(1) required the trial court clerk to enter a default. See *Huntington Nat'l Bank*, 292 Mich App at 381. The trial court then entered the default judgment awarding plaintiff the amount sought.

Defendant thereafter moved to set aside the default judgment. Under MCR 2.603(D)(1), "[a] motion to set aside a default or a default judgment . . . shall be granted only if good cause is shown and a statement of facts showing a meritorious defense, verified in the manner prescribed by MCR 1.109(D)(3), is filed." See *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 554; 872 NW2d 412 (2015). Although the law favors a determination of a claim on the merits, *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999), and disfavors defaults and default judgments, nonetheless, the law also disfavors setting aside a properly entered default and default judgment, *Saffian v Simmons*, 477 Mich 8, 15; 727 NW2d 132 (2007).

## A. GOOD CAUSE

The party moving to set aside a default judgment bears the burden of demonstrating good cause and a meritorious defense. *Id*. at 14. Although good cause and a meritorious defense are distinct requirements, a lesser showing of good cause is required if the moving party demonstrates a strong meritorious defense. *Alken-Ziegler, Inc*, 461 Mich at 233-234.

-3-

To demonstrate good cause to set aside a default and default judgment, the moving party must show either "(1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 221; 760 NW2d 674 (2008); but see *Brooks Williamson & Assoc, Inc v Mayflower Constr Co*, 308 Mich App 18, 25; 863 NW2d 333 (2014) (Good cause may be established by demonstrating "a procedural irregularity or defect or a reasonable excuse for failing to comply with the requirements that led to the default judgment") (quotation marks and citation omitted). Under *Shawl*, the factors relevant to whether a party has shown good cause are:

> (1) whether the party completely failed to respond or simply missed the deadline to file;
>
> (2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;
>
> (3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;
>
> (4) whether there was defective process or notice;
>
> (5) the circumstances behind the failure to file or timely file;
>
> (6) whether the failure was knowing or intentional;
>
> (7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);
>
> (8) whether the default judgment results in an ongoing liability (as with paternity or child support); and
>
> (9) if an insurer is involved, whether internal policies of the company were followed. [*Shawl*, 280 Mich App at 238 (footnote omitted).]

In this case, the trial court determined that defendant had not demonstrated good cause. The trial court found that service was proper and that defendant had failed to respond because its CEO was occupied with selling the business and the correspondence of the business apparently was mismanaged during that time; when the CEO was made aware of the lawsuit and the default, he did not prioritize responding to the litigation, and as a result a default judgment was entered.

We agree that defendant did not establish good cause by demonstrating a substantial defect or irregularity in the proceedings upon which the default was based; defendant does not allege any defects in the service or the notice. At first glance, defendant also did not establish good cause by demonstrating a reasonable excuse for failure to respond to the complaint applying the relevant *Shawl* factors. According to his affidavit, defendant's CEO was extremely busy and traveling out of the state during much of 2022 negotiating the sale of the business; in addition, there had been many personnel changes during the year and changes in the duties of the employees. Grzech admits, however, that he was aware of the lawsuit and the default by October 21, 2022, but chose

to delay contacting defendant's attorney, apparently not appreciating the gravity of the situation. Although initially defendant's failure to respond perhaps was neither knowing nor intentional, after October 21, 2022, defendant's CEO chose to delay. Weighing against these circumstances is the fact that the size of the judgment is substantial.

"The carelessness or neglect of either the litigant or his attorney is not normally grounds for granting a belated application to set aside a default regularly entered." *White v Sadler*, 350 Mich 511, 522; 87 NW2d 192 (1957). In the context of determining good cause, a party is held to be responsible for its own action or inaction, *Alken-Ziegler, Inc*, 461 Mich at 224, and negligence in responding to a lawsuit typically does not establish good cause, *Park v American Cas Ins Co*, 219 Mich App 62, 67; 555 NW2d 720 (1996). In addition, "a lay defendant's lack of knowledge of the law and its consequences will not necessarily provide a reasonable excuse and good cause to set aside a default." *Reed v Walsh*, 170 Mich app 61, 65; 427 NW2d 588 (1988). Without considering the defendant's assertion of a meritorious defense, a review of the circumstances of defendant's default suggests that defendant did not establish good cause to set aside the default judgment. See *Shawl*, 280 Mich App at 221. However, whether defendant established good cause may be affected by whether defendant demonstrated a meritorious defense.

## B. MERITORIOUS DEFENSE

To demonstrate a meritorious defense, the moving party must file an affidavit setting forth sufficient facts to support a defense that, if proven, would afford the moving party a defense against the plaintiff's claim. *Tindle v Legend Health, PLLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360861); slip op at 6. The affiant must have personal knowledge of the facts, state admissible facts with particularity, and show that the affiant can testify competently to the facts averred. *Huntington Nat'l Bank*, 292 Mich App at 392.

Factors relevant to establishing a meritorious defense include "whether the affidavit contains evidence that: (1) the plaintiff cannot prove or the defendant can disprove an element of the claim or a statutory requirement; (2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7), or (8); or (3) the plaintiff's claim rests on evidence that is inadmissible." *Shawl*, 280 Mich App at 238. The affidavit submitted typically must identify evidence adequate to inform the trial court whether the movant has a meritorious defense. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 5.

In its motion to set aside the default judgment, defendant asserted that its meritorious defense was that plaintiff failed to establish the elements of negligence, in particular the element of causation. In this way defendant asserted that plaintiff cannot prove an element of its claim, which is the first of the three alternative means of demonstrating a meritorious defense under *Shawl*. Defendant supported its motion to set aside the default judgment with a second Grzech affidavit asserting that plaintiff failed to establish either the breach or causation elements of its negligence claim. The affidavit does not identify the evidence that supports the assertions; however, evidence supporting the defendant's argument was part of the trial court record, namely the Nederveld report submitted as Exhibit E to plaintiff's motion for default judgment. The trial court therefore was already informed of the nature of defendant's asserted defense sufficient to permit the trial court to determine whether the defense was meritorious.

-5-

As noted, plaintiff's motion for default judgment attached two reports that ostensibly demonstrated causation and damage.  Attached as an exhibit to the motion is a 2015 inspection report from Titus Associates, PC, an architecture and structural engineering firm.  The report, prepared by architect Ronald F. Titus, concluded that the steam bombarding the south side of the building was accelerating the aging of the building.  The report stated in part:

> We have found definitively that you do have reason for concern.  In short, the constant and excessive moisture that this façade is bombarded with does in fact have detrimental effects on the following areas:  the steel fire escape structure on the exterior of the building, the structural steel in the basement (first floor structure), and the complete south (alley) façade, including the brick masonry and the steel window lintels.  The continuous exposure of the south (alley) façade to this constant flow of steam/moisture has basically accelerated the aging and therefore deterioration of all elements of the building that are exposed to it.  This accelerated deterioration requires an equally accelerated and onerous maintenance program to ensure the integrity of the structure, longevity of the building and the ongoing safety of its occupants and neighbors.

Also attached as an exhibit to the motion for default judgment is the Forensic Engineering Report prepared by forensic engineers with Nederveld, Inc, apparently prepared for plaintiff's insurer based upon an inspection in January 2016.  The Nederveld report confirms the deterioration of certain aspects of the building, such as the fire escape and the brick, but disagrees that there is evidence that the deterioration was caused by the steam.  The Nederveld report notes that the Titus report attributes the damage to moisture, but does not provide measurable data about the amount of moisture or about the source of the moisture.  The Nederveld report concludes that the deterioration of the elements of the building in question was caused by environmental moisture, especially as it drains from the top of the building down the fire escape and the building façade, but is not attributable to the steam; the report notes that the moisture damage is greater at the top of the building than at street level, which is subjected to the steam.  The report also concludes that the deterioration of the building is attributable to the age of the building (the oldest portion was constructed in 1906, and the fire escape was reported to be over 100 years old), and lack of proper maintenance.  The report concludes in relevant part:

> Based on our investigation, it is our opinion that the observed conditions at the subject property are the result of long-term, chronic, environmental moisture exposure acting in combination with a readily apparent lack of proper and timely maintenance.  The deterioration of exterior elements at the south side of the building and interior structural elements within the basement at the west and north have not been caused or exacerbated by exposure to steam, which exhausts at ground level.  We observed the greatest degree of exterior brick façade deterioration to occur near roof level, six stories above the point source of the steam exhaust.

> With regard to the exterior façade and painted steel framed fire escape at the eastern portion of the building (Murphy Building), the spalling of the painted brick masonry and corrosion of the fire escape is, in our opinion, the result of exposure to expected environmental moisture.  Chronic and long-term exposure to the elements has caused the various forms of deterioration observed.  The increased

incidence of spalling near to the roof is indicative of the elevated moisture volume from the roof. Similarly, the relatively greater degree of corrosion at the lower portion of the fire escape is the result of the increase in environmental moisture volume as it accumulates and drains down the building facade and fire escape. The deterioration of this steel structure is exacerbated by a lack of proper and timely maintenance. Like all structural elements, these reportedly over 100 year old steel elements have finite service lifespan which can be extended by proper and timely maintenance which includes replacement of building elements when they have reached the end of their useful service life.

The deterioration of the concrete encased steel framing elements, including readily apparent and exposed corroded reinforcement steel of the elevated concrete slabs, at the western and northern portions of the Telegraph Building's basement, is, in our opinion, the result of chronic long-term environmental moisture exposure originating from the sidewalks above at the exterior of the building which are supported by this portion of the structure. Moisture staining and moisture trails from the sidewalk region above confirm the intrusion of environmental moisture from downward migration through the slab. The deterioration of the noted structural elements is exacerbated both by the seasonal use of de-icing chemicals and salts on the sidewalk above, as well as by an apparent lack of proper and timely maintenance. From the presentation of the deteriorated structural elements, it is apparent that environmental moisture has been penetrating into this area of the structure for many years (decades). Over time this has caused deterioration of the concrete-encased steel framing and reinforcing elements, leading to expansion (long-term and chronic build-up of corrosion on the steel surfaces) of the material, resulting in eventual spalling deterioration of the concrete coverings. The widespread nature of this deterioration beneath the exterior sidewalks is not indicative of an isolated moisture source such as a steam pipe failure. Heat generated by the reported steam pipe failure, measured by the property owner to be up to 170°F, is well below the threshold capable of damaging either steel or concrete.

In ruling on the motion for entry of the default judgment, the trial court did not discuss whether plaintiff had set forth a claim of negligence before holding that plaintiff had presented adequate support for the amount of damages requested. When later ruling on the motion to set aside the default judgment, the trial court did not focus upon the merits of defendant's asserted defense that plaintiff failed to state a cause of action for negligence, but instead reasoned that by failing to respond to the complaint, defendant had confessed the elements of duty, breach, and causation. The trial court thus rejected defendant's assertion of a meritorious defense on the basis that defendant's default precluded defendant from challenging plaintiff's claim. The trial court then held that the Grzech affidavit of meritorious defense was insufficient to establish a meritorious defense:

Here, evidence was presented that damage to Plaintiff's building was a proximate cause of activity to wit the operation of the steam line that need not go any further because, respectfully, those allegations are deemed admitted due to Defendant's failure to timely respond.

-7-

* * *

I am not convinced by the evidence presented that the information provided is sufficient to cause me to consider that this claimed defense rises to the level that the law requires in such a motion. If one looks at the law, the meritorious defense that is required is significant. Even a close call would favor maintenance of the default judgment.

* * *

All right, further in talking about a meritorious defense that the Plaintiff cannot prove or the Defendant can disprove an element of the claim is one part of a three-part test identifying other ways to support an Affidavit of Meritorious Defense.

Here, I agree with Defendant, the Plaintiff's claims were supported by admissible documents and the testimony taken. The second would be a ground for summary disposition exists under MCR 2.116[C](2), (3), (5), (7), and (8), and none of those grounds is here relevant. I find that the evidence presented is not inadmissible, implicit in the Court's ruling is that each of the exhibits submitted were considered, weighed, and formed the basis of my ruling.

As it relates to the manifest injustice argument again, here, if I were to set aside the default judgment, I would be eliminating that from the court rules as an option for a party seeking to proceed forward on its case

As discussed, factors relevant to establishing a meritorious defense include whether the affidavit contains evidence that "the plaintiff cannot prove or the defendant can disprove an element of the claim or a statutory requirement." *Shawl*, 280 Mich App at 238. Thus, a defendant can demonstrate a meritorious defense by showing deficiencies in the plaintiff's claim. See *Lawrence M. Clarke, Inc*, 489 Mich at 283 (In the context of a motion for relief from judgment under MCR 2.612, "[d]efendants have also noted several fundamental deficiencies in plaintiff's fraud claim that constitute a meritorious defense to those claims").

In this case, the trial court did not consider in detail defendant's assertion that plaintiff had not established the elements of negligence. At the hearing on the motion for entry of default judgment, the trial court did not focus on the elements of duty, breach, or causation, and instead focused primarily on damages. The trial court also did not observe that only the Titus report supported plaintiff's claim and that the Nederveld report unequivocally stated that steam from defendant's steam pipes was *not* the cause of the deterioration of the building. In later ruling upon defendant's motion to set aside the judgment, the trial court stated that it had reviewed all the exhibits, but again did not discuss that one of the reports submitted supported defendant's argument. Instead, the trial court concluded that defendant had conceded that argument by defaulting. This was an error of law, because the trial court was required by *Shawl* to consider at this stage whether defendant had demonstrated that plaintiff could not prove an element of its claim for damages. The trial court could not simply conclude, as it did here, that defendant had conceded

-8-

this point by not responding timely to the complaint. Indeed if that were the law, no defendant could ever have a default judgment set aside.

In sum, defendant raised a potentially meritorious defense in its motion to set aside the default judgment.[1] The trial court failed adequately to consider the merits of defendant's asserted defense because it concluded that defendant waived its right to challenge the sufficiency of the complaint by defaulting. Because a defaulting defendant has the right to have the trial court consider its assertion of a meritorious defense despite its default, the trial court erred as a matter of law, and thereby abused its discretion. See *In re Nikooyi*, 341 Mich App at 494 (A trial court abuses its discretion when it errs as a matter of law).

## C. MANIFEST INJUSTICE

Defendant also contends that the default judgment should be set aside to prevent manifest injustice. Defendant argues that because it set forth a meritorious defense, manifest injustice would result from permitting the default to stand. However, defendant must establish good cause even if defendant established a meritorious defense.

As discussed, good cause and a meritorious defense are distinct requirements and each must be demonstrated to warrant setting aside a default judgment, *Alken-Ziegler, Inc*, 461 Mich at 229, although a lesser showing of good cause is required if the moving party demonstrates a strong meritorious defense. *Id*. at 233-234. As set forth in *Shawl*, good cause to set aside a default and default judgment includes "(1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand. *Shawl*, 280 Mich App at 221.

Manifest injustice occurs "if a default were to be allowed to stand where a party has satisfied the 'meritorious defense' and 'good cause' requirements of [MCR 2.603(D)(1)]." *Alken-Ziegler, Inc*, 461 Mich at 233. This test appears circular: To demonstrate manifest injustice, the moving party must demonstrate good cause and a meritorious defense, but good cause to set aside a default and default judgment may be demonstrated by showing that manifest injustice would result from permitting the default to stand. However, in *Alken-Ziegler*, our Supreme Court explained that despite the frequent recitation of the "manifest injustice" prong of the good cause test, that prong does not alleviate a defendant from the burden of proving good cause. *Id*. at 233-234. The Court stated:

> It is the third factor, "manifest injustice," that has been problematic. The difficulty has arisen because, properly viewed, manifest injustice is not a discrete occurrence such as a procedural defect or a tardy filing that can be assessed independently.

---

[1] Defendant also argues that plaintiff's claim is barred by the statute of limitation. Because this argument is raised for the first time on appeal, it is not preserved for review and is deemed waived. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Although this Court has inherent authority to review an issue not raised in the trial court to prevent a miscarriage of justice, *id*., we find it more appropriate that the trial court consider this issue in the first instance on remand.

Rather, manifest injustice is the result that would occur if a default were to be allowed to stand where a party has satisfied the "meritorious defense" and "good cause" requirements of the court rule. When a party puts forth a meritorious defense and then attempts to satisfy "good cause" by showing (1) a procedural irregularity or defect, or (2) a reasonable excuse for failure to comply with the requirements that created the default, the strength of the defense obviously will affect the "good cause" showing that is necessary. In other words, if a party states a meritorious defense that would be absolute if proven, a lesser showing of "good cause" will be required than if the defense were weaker, in order to prevent a manifest injustice. [*Alken-Ziegler*, 461 Mich at 231-232.]

As discussed, in this case defendant has not stated a reason for its failure to respond to the complaint that alone would be considered to be sufficient good cause. However, when weighed together with the meritorious defense demonstrated by defendant, the showing of good cause was arguably adequate to set aside the judgment to avoid manifest injustice.[2]

In this case, defendant set forth an arguably meritorious defense; the record suggests that plaintiff did not, and perhaps cannot, establish that the damage to its building was caused by defendant. The trial court did not give full credence to defendant's assertion of a meritorious defense because it concluded that defendant conceded the allegations of the complaint by defaulting. We conclude that under these circumstances a lesser showing of good cause is sufficient and that manifest injustice would arise by allowing the default judgment to stand without further proceedings before the trial court to permit plaintiff to demonstrate the merits of its complaint, to permit defendant to establish the merits of its defense, and to permit the trial court an opportunity to decide the merits of the parties' arguments.

## D. DAMAGES

Defendant also contends that the trial court abused its discretion by awarding the damages sought because plaintiff failed to provide evidentiary support. We agree.

We review for clear error the trial court's determination regarding the amount of damages awarded. *Jackson*, 342 Mich App at 24. Clear error exists when no evidence supports a finding, or if the reviewing court is left with a firm and definite conviction that the trial court made a mistake. *King v Michigan State Police Dep't*, 303 Mich App 162, 185; 841 NW2d 914 (2013).

---

[2] Our Supreme Court in *Alken-Ziegler* also observed that although MCR 2.603(A) provides that a motion to set aside a default judgment is granted only if the moving party establishes good cause and a meritorious defense, MCR 2.603(D)(3) provides that "[i]n addition, the court may set aside a default and a default judgment in accordance with MCR 2.612," which governs motions for relief from judgment. Although MCR 2.603(D)(3) "should not be read to obliterate the requirements of MCR 2.603(D)(1), trial courts still have discretion to grant relief under MCR 2.603(D)(3) to prevent manifest injustice." *Alken-Ziegler*, 461 Mich at 234 n 7; see also *Tolas Oil & Gas*, ___ Mich App at ___; slip op at 5.

A default judgment is not an admission of the amount of damages, which a defaulting defendant may dispute. *Epps*, 498 Mich at 554. In this case, the trial court awarded plaintiff damages in the amount of $488,595. In support of its motion for default judgment, plaintiff attached invoices that provided estimates for alleged expenses to repair the building totaling approximately $278,938. Of that amount, it is unclear what the invoices represent or whether they are justified. For some items for which damages were sought, there is no documentation or testimony that links the amounts requested with work necessitated by the alleged steam damage. The testimony presented at the hearing on the motion largely did not address the amounts sought as damages. Because the evidence does not support the amount of damages awarded, the trial court clearly erred. Remand therefore is warranted to permit plaintiff to provide evidence supporting the amounts sought and to permit defendant to respond.

We vacate the trial court's order denying defendant's motion to set aside the default judgment and remand for further proceedings. On remand, the trial court should consider the merits of defendant's assertion of a meritorious defense and, should the trial court conclude the default judgment should still not be set aside, to consider whether plaintiff adequately supported its claim for damages.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh