*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

NBRNE RE, LLC,

        Plaintiff/Counterdefendant-Appellee,

v

AEN PROPERTIES, LLC,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
July 17, 2025
2:12 PM

No. 369761
Lapeer Circuit Court
LC No. 20-054006-CZ

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

In this action to quiet title, plaintiff/counterdefendant, NBRNE RE, LLC, obtained a default judgment against defendant/counterplaintiff, AEN Properties, LLC, as a result of AEN Properties's failure to appear for trial. AEN Properties moved to set aside the default judgment, which the trial court denied. AEN Properties now appeals by right. We affirm in part, vacate in part, and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This action involves a family dispute over two parcels of property located in North Branch, Michigan—5967 N. Lapeer Road and an adjacent parcel of vacant land. The relevant parties are: (1) Naim B. Mashni; (2) Mary T. Mashni; (3) Boulos Mashni;[1] (4) Raymond Mashni; (5) AEN Properties; and (6) NBRNE. Naim and Mary are married and the parents of Boulos and Raymond. During his lifetime, Boulos was the sole member of AEN Properties. Raymond, a licensed Michigan attorney, is the sole member of NBRNE.

Mary was the original owner of the disputed parcels. Naim and Mary owned and operated several businesses over the span of several decades. One of those business was a video store that was located at 5967 N. Lapeer Road. In 2007, Naim and Mary planned to deed the disputed parcels

---

[1] Boulos died in September 2021 during this litigation.

-1-

to Boulos and Raymond so that they could develop the property. Instead, they told Boulos that they would gift the property to him.

On August 16, 2007, Mary, in her individual capacity, executed quitclaim deeds purporting to convey 5967 N. Lapeer Road and the adjacent parcel of vacant land to Naim and Mary jointly. On the same date, Naim and Mary executed quitclaim deeds purporting to convey 5967 N. Lapeer Road and the adjacent parcel of vacant land to Boulos's limited liability company—AEN Properties. Raymond prepared all of the deeds. Jessica A. Patykowski, Raymond's legal assistant, notarized the signatures on each of the executed deeds. The deeds were not recorded.

On the same date, AEN Properties, Naim, Mary, and Boulos executed a consensual lien against both disputed parcels in the amount of $100,000 in favor of Raymond. The lien stated that it was "a recordable lien against my[2] interest in real estate and/or real property to secure the [$100,000] to be paid in full without interest on or before August 15, 2008." It further stated, "This Lien may be foreclosed upon in equity in the same manner as a mortgage may be foreclosed under the laws of the State of Michigan." Naim, Mary, and Boulos each signed the lien. Boulos also signed the lien a second time as the "Managing Member" of AEN Properties. Raymond prepared the lien, and Patykowski notarized the signatures. The lien was not recorded against the property. It is undisputed that neither Boulos nor AEN Properties made the $100,000 payment to Raymond by the August 15, 2008 deadline.

On January 9, 2017, Mary executed a quitclaim deed purporting to convey the disputed parcels to NBRNE. Raymond prepared the deed. Alicia Lindsey notarized Mary's signature on the executed deed. The deed was recorded in the Lapeer County Register of Deeds.

In August 2020, NBRNE commenced this quiet title and declaratory action against AEN Properties. NBRNE alleged that the conveyance of the disputed parcels to AEN Properties was subject to conditions that were not met. NBRNE asserted that the 2007 deeds were never delivered to AEN Properties or recorded. NBRNE alleged that Boulos claimed AEN Properties owned the disputed parcel. NBRNE maintained that AEN Properties did not have any legitimate right or claim to the parcels.

AEN Properties denied that NBRNE was entitled to any relief and asserted counterclaims for quiet title, slander of title, and, alternatively, unjust enrichment.[3] AEN Properties alleged that the consensual lien was never recorded against the property. It further asserted that Raymond never attempted to collect on the lien. AEN Properties contended that the 2007 deeds became unassailable upon the expiration of the statute of limitations to enforce the lien. AEN Properties asserted that, since 2007, Boulos and/or AEN Properties exercised ownership over the parcels, paid the real estate taxes, and maintained the property. AEN contended that it reasonably relied on Raymond's representations that the 2007 deeds would be recorded with the register of deeds and assumed that Raymond had done so. AEN Properties alleged that the 2017 quitclaim deed to

---

[2] The lien identifies "I" as Naim, Mary, and Boulos as members of AEN Properties.

[3] AEN Properties filed a first-amended counterclaim within 14 days of NBRNE's answer to its counterclaim. However, the amended counterclaim appears to be identical to the original.

NBRNE was ineffective because the subject property was effectively conveyed to AEN Properties in 2007.

In response to the counterclaim, NBRNE alleged that the $100,000 payment to Raymond was a condition precedent to the conveyance of the property to AEN Properties. NBRNE asserted that Naim and Mary instructed Raymond not to deliver or record the 2007 deeds unless the $100,000 payment was made to Raymond by the August 15, 2008 deadline. Because the payment was not made, NBRNE maintained that ownership of the property was never effectively conveyed to AEN Properties. NBRNE further alleged that AEN Properties had "never publicly asserted any rights of ownership such as paying taxes, insurance and the like or declaring that AEN [Properties] even owned the property on applicable tax returns."

Before discovery commenced, AEN Properties moved for partial summary disposition on the competing quiet title claims under MCR 2.116(C)(10) arguing that there was no genuine issue of material fact that the 2007 quitclaim deeds were unconditionally delivered to AEN Properties and thus the 2017 deed to NBRNE was invalid as a matter of law. AEN Properties asserted that the express terms of the 2007 deeds and consensual lien indicated that AEN Properties had title to the parcels. It maintained that there was a presumption of delivery of the deeds because Boulos was present when the deeds were signed and AEN Properties had possession of the deeds. It argued that NBRNE could not rebut this presumption with parol evidence. AEN Properties further argued that the 2017 quitclaim deed to NBRNE was invalid because NBRNE had actual knowledge that AEN Properties held unrecorded deeds to the disputed parcels and thus NBRNE could not be considered a good faith purchaser.

NBRNE moved for summary disposition in its favor under MCR 2.116(I)(2) arguing that there was no genuine issue of material fact that the conditional conveyance to AEN Properties was never completed.[4] First, NBRNE asserted that Naim and Mary were necessary parties to AEN Properties's counterclaim under MCR 2.205(A). NBRNE further alleged that Naim and Mary intended that the 2007 gift of the disputed parcels be conditioned on payment of $100,000 to Raymond, as reflected by the plain language of the consensual lien. Because the payment was not made by the deadline, NBRNE asserted that there was no conveyance. NBRNE submitted affidavits from Mary, Raymond, and Gillian Mashni—Naim and Mary's daughter—to establish that the 2007 deeds were conditional gifts and that there was no delivery of the deeds. Additionally, because the 2007 deeds from Mary to Naim were never delivered or recorded, NBRNE asserted that Mary and Naim did not have legal title to transfer ownership to AEN Properties. NBRNE also argued that post-2007 tax records demonstrated that Mary continued to treat the property as her own by collecting rent after the alleged transfer to AEN Properties.

Following a hearing, the trial court denied AEN Properties's motion under MCR 2.1169(C)(10) and NBRNE's request for relief under MCR 2.116(I)(2). The court opined that

---

[4] NBRNE also argued that it was entitled to summary disposition under MCR 2.116(I)(2) because AEN Properties's claims for slander of title and unjust enrichment were barred by the applicable limitations periods. Because those claims were not at issue in AEN Properties's motion for partial summary disposition, the trial court did not consider this argument.

AEN Properties had established a prima facie claim to the properties "based on the presumption of delivery that arises from its physical receipt of the executed deed[.]" The court also determined that extrinsic evidence was admissible to show whether the deeds had actually been delivered. The court concluded that a fact-finder could determine that "the evidence of nondelivery credibly rebuts any presumption of delivery that may arise from [AEN Properties's] physical possession of a deed" and thus there was "a genuine issue whether the deed to [AEN Properties] was made operative by delivery."[5]

After discovery closed, NBRNE moved for summary disposition under MCR 2.116(C)(7) and (10). Relying on the same affidavits and tax records, NBRNE argued that there was no genuine issue of material fact that the 2007 deeds for the disputed parcels were not delivered to AEN Properties and that the 2017 deeds were delivered to NBRNE and recorded. Alternatively, NBRNE asserted that the applicable statutes of limitations expired for AEN Properties's claims for slander of title and unjust enrichment. In response, AEN Properties once again argued that the documentary evidence showed delivery was effectuated and that extrinsic evidence was inadmissible under the parol-evidence rule. But it asserted, "At a minimum, there is a factual question regarding delivery of the 2007 deeds that cannot be resolved in this format."[6] Although AEN Properties did not dispute that its claim for unjust enrichment was subject to a three-year limitations period, it argued that the limitations period had not expired because the basis for the claim would not arise until a decision was rendered on the quiet tile claim.

Following a hearing, the trial court issued an opinion denying NBRNE's motion under MCR 2.1169(C)(10), but granting summary disposition under MCR 2.116(C)(7) to NBRNE as to AEN Properties's claims for slander of title and unjust enrichment.[7] Once again, the court determined that AEN Properties had raised a rebuttable presumption of delivery by establishing physical possession of the deeds. But the court concluded that summary disposition was not warranted because reasonable minds could disagree whether the presumption of delivery was overcome by the evidence.

Subsequently, the matter was reassigned to a new judge, and was set for a bench trial in October 2023.[8] In August 2023, AEN Properties retained new counsel. In September 2023, the parties stipulated to extend deadlines, allow NBRNE to amend its complaint, and adjourn trial. Specifically, the parties agreed to the following: (1) NBRNE "shall have 14 days from the date of

_____

[5] AEN Properties applied for leave to appeal the trial court's order, which this Court denied. *NBRNE RE, LLC v AEN Properties, LLC*, unpublished order of the Court of Appeals, entered July 23, 2021 (Docket No. 356871).

[6] AEN Properties conceded that it was no longer pursuing its claim for slander of title given Boulos's death.

[7] The lower court record does not reflect that an order was entered regarding NBRNE's dispositive motion.

[8] Although AEN Properties filed a jury demand, the pretrial scheduling orders reflect that the parties agreed to a bench trial.

[the] order to amend the complaint in this matter;" (2) "discovery shall be reopened for 90 days after the filing of the amended complaint for the purpose of conducting new discovery, not made redundant by discovery already conducted in this case;" (3) "the new deadline to file motions for summary disposition shall be 30 days after the filing of the close of discovery;" and (4) "the trial in this matter set for October 12, 2023 is adjourned until further order of this Court[.]" The certificate of service reflects that AEN Properties's counsel mailed the proposed stipulated order to the court and to NBRNE's counsel on September 7, 2023. The trial court signed the stipulated order on September 15, 2023. However, the trial court struck the language "until further order of this Court" regarding the trial adjournment and added handwritten dates of January 11, 2024 at 9:00 a.m. and January 12, 2024 at 9:00 a.m. for the bench trial.

NBRNE filed its first-amended complaint on November 1, 2023,[9] clarifying that the disputed property differed from the property identified in the initial complaint and adding an alternative claim for partition. AEN Properties denied the allegations in NBRNE's first-amended complaint and asserted counterclaims for quiet title, slander of title, and unjust enrichment that were identical to those asserted in its initial counterclaim and its first-amended counterclaim.

On January 11, 2024, NBRNE's counsel appeared for trial. Counsel for AEN Properties did not appear. The trial court called the matter at 10:08 a.m. The court stated that it had entered a stipulated order on September 15, 2023 that extended deadlines and adjourned trial. The court indicated that "[t]he trial dates were then written into the order for January 11, 2024 at nine a.m., and January 12, 2024 at nine a.m. And [AEN Properties] has not appeared or contacted the Court, has not filed a witness list, exhibit list, or trial brief."[10] When the court asked NBRNE's counsel how he wished to proceed, he responded that he wanted to present proofs and requested that a default judgment be entered. The court stated that the clerk's office confirmed that "the procedure on this case and any case would be that these trial dates added in [sic], that the order would then be sent back to [AEN Properties's counsel's] law firm . . . with the correct dates on it."[11] Following testimony from Mary and Raymond, and the admission of documentary evidence, NBRNE requested, *inter alia*, a default judgment awarding the subject property to NBRNE, a finding that AEN Properties's counterclaims for slander of title and unjust were frivolous, and permission to file a bill of costs and fees.

On January 11, 2024, the trial court entered a default judgment against AEN Properties. The court found "after consultation with court personnel, that [AEN Properties's] counsel prepared an Order that was entered on September 15, 2023 and was mailed by the Court to [AEN Properties's] counsel at that time." The court entered a default against AEN Properties finding that it failed to appear for trial "and that such nonappearance is without good cause." The court

---

[9] This was beyond the 14-day deadline set in the September 15, 2023 stipulated order.

[10] The lower court record reflects that AEN Properties filed a witness list in August 2021 and another one in June 2022. However, it does not reflect that either party filed an exhibit list or a trial brief.

[11] NBRNE's counsel requested to take testimony from the court clerk regarding the service of the order on AEN Properties's counsel, but the trial court expressed that it did not want to make the court clerk a party to the action.

concluded that NBRNE prevailed on the merits of its claims for quiet title and declaratory judgment and that partition was unnecessary. The court ordered that any lis pendens filed by AEN Properties be removed from the subject property. The court also issued an order of ejectment against AEN Properties and all of Boulos's business affiliates. The court entered a no cause of action on AEN Properties's counterclaim for quiet title. In addition, the court adjudged AEN Properties's counterclaims for slander of title and unjust enrichment as frivolous, finding that AEN Properties did not have a reasonable basis to file the counterclaims because they were previously dismissed under MCR 2.116(C)(7). NBRNE was directed to submit a bill of costs.

AEN Properties moved to set aside the default judgment. First, AEN Properties argued that there was good cause to set aside the default. It submitted three affidavits attesting to the fact that no one at AEN Properties's counsel's office received the September 15, 2023 order that set trial dates for January 2024. AEN Properties argued that the stipulated order contradicted the parties' agreement because the earliest dispositive motion deadline would have been on January 27, 2024, but the court set trial to begin on January 11, 2024. It maintained that defense counsel "was under the very reasonable impression that trial had been adjourned beyond February 28, 2024[.]" AEN Properties further asserted that it had a meritorious defense to NBRNE's claims and submitted affidavits from two witnesses attesting that Boulos made payments to Raymond "over the years." In response, NBRNE asserted that AEN Properties had failed to establish good cause or set forth a meritorious defense to warrant setting aside the default judgment.

The trial court made the following findings:

So the Court is satisfied that a stipulated order was provided to the Court. The Court put the trial dates on the order and sent it back to the defendant who prepared the stipulated order, and notice was given.

No one showed up for the trial. The issue becomes is there a meritorious defense?

The Court took testimony. The parents of these parties owned the property. They were doing this in the way of an estate planning, dividing their properties up among their children. It's clear from the testimony that was presented that they're competent, they knew what they were doing.

They made a choice with a contingency to give one child. And that contingency wasn't that—not for one year, but for almost ten years. And then when that contingency wasn't met, they followed through with their original plan and deeded the property to the other child.

There's no mistake here. There's no trial. There's just argument that isn't supported.

The Court finds there is no meritorious defense; that this is—the parents clearly knew what they wanted to do and did it. And for those reasons, the Court is not going to set aside the default.

The trial court entered an order denying AEN Properties's motion for the reasons stated on the record. This appeal followed.

## II. PARTIAL SUMMARY DISPOSITION

AEN Properties argues that the trial court erred by denying its motion for partial summary disposition on the competing quiet title claims under MCR 2.116(C)(10). We disagree.

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up).

In an action to quiet title, the plaintiff has the burden to establish a prima facie case of title. *Special Property VI v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). "Delivery of a deed is essential to pass title." *Resh v Fox*, 365 Mich 288, 291; 112 NW2d 486 (1961). Recording is not necessary for a deed to be valid or effective between the parties. *Ligon v Detroit*, 276 Mich App 120, 128; 739 NW2d 900 (2007). "The purpose of the delivery requirement is to show the grantor's intent to convey the property described in the deed." *Energetics, Ltd v Whitmill*, 442 Mich 38, 53; 497 NW2d 497 (1993). The key question is whether the grantor intended to convey a present interest in the land. *Resh*, 365 Mich at 291. Physical delivery of a deed raises a presumption of an intent to pass title, but the presumption is not conclusive and may be rebutted with other evidence. *Id*. at 291-292, see also *Tighe v Davis*, 283 Mich 244, 248-249; 278 NW 60 (1938) (physical delivery without the requisite intention does not meet the requirement of delivery so as to validate the deed).

A deed can be set aside when the presumption of delivery is overcome. *Creller v Baer*, 354 Mich 408, 412; 93 NW2d 259 (1958). "The subsequent conduct of the parties may be taken into consideration in determining whether there was intention to pass title," and "[t]his may be done despite the presumption of passage of title arising by virtue of possession of the deed by the grantee." *Resh*, 365 Mich at 292. When the party burdened by the presumption presents sufficient evidence to dispel the presumption, the opposing party must still carry the "burden of proving delivery and requisite intent." *Havens v Schoen*, 108 Mich App 758, 761; 310 NW2d 870 (1981).

The trial court properly concluded that Boulos's physical possession of copies of the quitclaim deeds raised a presumption of intent to pass title. See *Resh*, 365 Mich at 291-292. To rebut this presumption, NBRNE submitted affidavits from Mary, Raymond, and Gillian. NBRNE also submitted income tax records demonstrating that Mary continued to treat 5967 N. Lapeer Road as her own by collecting rent from the video store through at least 2010. AEN Properties argues that this extrinsic evidence was inadmissible under the parol-evidence rule. We disagree. Because physical possession of an executed deed merely creates a presumption of delivery and is

not itself dispositive of delivery, countervailing evidence may be used to rebut this presumption. *Id.* at 292.

In fact, AEN Properties also relied on extrinsic evidence—the consensual lien—to demonstrate the intent of Mary and Naim to transfer the property to AEN Properties. AEN Properties contends that the plain and unambiguous language of the consensual lien showed Mary's and Naim's present intention to part with the deeds and relinquish the right to retain them. The consensual lien identified Mary, Naim, and Boulos as members of AEN Properties and granted Raymond a $100,000 recordable lien in what was described as "my" interest in the disputed parcels. AEN Properties argues that the "my" referred to in the lien is "unquestionably" AEN Properties. We disagree. Mary and Naim signed the lien on their own behalf as individuals. Boulos signed consensual lien twice—as an individual and as "Managing Member" of AEN Properties. AEN Properties asserted in its counterclaim and motion for partial summary disposition that Boulos was "the *sole* member of AEN Properties." (Emphasis added.) The consensual lien's reference to "my" interest in the subject property is ambiguous given that AEN Properties's own pleadings establish that Naim and Mary were not members of AEN Properties and neither Mary or Naim signed the consensual lien as members of AEN Properties. Given this ambiguity, the consensual lien is subject to interpretation.[12]

Mary insisted in her affidavit that the deeds were not delivered to Boulos. According to Mary, she and Naim indicated that they would "convey the property by gift to Boulos provided he pay Raymond $100,000.00 for Raymond's interest in the property." Mary and Naim allegedly "made very clear that [Boulos] would not receive the property until after paying the $100,000.00 within a year." Raymond was purportedly instructed to record the 2007 deeds only if Boulos made the full payment to Raymond. Because Boulos did not pay Raymond $100,000 by the deadline, Mary maintained that the gift condition was not met. NBRNE also presented tax records that reflected Mary continued to treat 5967 N. Lapeer Road as her own by collecting rent from the video store through at least 2010.

---

[12] As the trial court explained, the consensual lien is subject to several interpretations, which precluded the grant of summary disposition to either party on their claims to quiet title:

> The only significance of the consensual lien is as circumstantial evidence of the grantors' intentions regarding delivery of the deed. The purpose of the lien is uncertain because it was executed both by the grantors and the grantee. A lien created by the grantors prior to gifting the property would not require the grantee's consent, and execution of the lien by the grantee could have no legal effect prior to unconditional delivery of the deed. However, execution of the lien by the grantors is consistent with either an unconditional gift of property subject to the lien or with creation of an incumbrance on the grantors' property, the satisfaction of which could be made a condition for delivery of the deed. Additionally, the grantee's consent to the lien may have been procured prior to the anticipated delivery of the deed to confirm that the gift would be accepted along with the conditions imposed on it.

Similarly, Raymond averred that Mary instructed him not to record any of the four August 2007 quitclaim deeds or deliver them to Boulos unless he received the $100,000 by August 15, 2008. Raymond had possession of the original executed deeds, and Mary allegedly maintained control over the parcels until she ultimately conveyed the property to NBRNE in 2017. According to Raymond, Mary continued to run the video store on the property until 2012. Raymond maintained that Mary gifted the subject property to NBRNE in 2017.

Gillian contended that Mary clearly articulated that the·deeds to the disputed parcels "would not be delivered to Boulos nor recorded unless and until he paid . . . Raymond money for his interest in the property." Gillian asserted that she was present when Mary allegedly directed "Raymond not to record the Deeds or deliver them to Boulos if Boulos had not paid the money that was due . . . ."

On the basis of this evidence, we conclude that NBRNE met its burden by putting forth evidence of conduct inconsistent with an intent to convey a present interest in the disputed parcels to AEN Properties when the deeds were signed in 2007. See, e.g., *Lawton v Campau*, 214 Mich 535, 536-537; 183 NW 203 (1921) (grantor's testimony that she did not intend to convey a present interest to the grantee when she recorded deed was sufficient to rebut presumption). The burden then shifted back to AEN Properties to prove delivery and requisite intent. See *Havens*, 108 Mich App at 761. But AEN Properties failed to present any evidence—other than the ambiguous consensual lien—disputing Mary's claim that the deeds were never delivered. There is a genuine issue of material fact whether Mary and Naim intended to convey a present interest in the subject property to AEN Properties at the time that they signed the deeds and thus the trial court did not err by concluding that AEN Properties was not entitled to summary disposition on its quiet title claim.

AEN Properties further argues that it was entitled to summary disposition on NBRNE's quiet title claim because Raymond was aware of the 2007 unrecorded deeds and thus NBRNE was not a good faith purchaser of the subject property. The validity of the 2017 conveyance to NBRNE is dependent on whether title passed to AEN Properties. See *Resh*, 365 Mich at 291. Although Raymond was aware of the 2007 deeds, he averred that the 2007 transaction was a conditional conveyance and there was no delivery of the 2007 deeds because the condition precedent did not occur. Raymond maintained physical possession of the original 2007 deeds at the direction of Mary. And Mary's subsequent actions demonstrated to Raymond that she continued to exercise ownership over the property. Further, NBRNE recognized in its complaint for declaratory relief that the parties had "adverse interests which must be adjudicated by this Court." If title to the subject property passed to AEN Properties, then NBRNE's quiet title claim would necessarily fail. But because the validity of the 2007 deeds must first be determined, the trial court did not err by denying AEN's motion for summary disposition on NBRNE's quiet title claim.

### III. DEFAULT JUDGMENT

AEN Properties argues that the trial court abused its discretion by denying its motion to set aside the default judgment. We agree.

We review a trial court's decision to set aside a default judgment for an abuse of discretion. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). "A trial court abuses its discretion

when its decision falls outside the range of reasonable and principled outcomes." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024). We review for clear error a trial court's factual findings. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011). A finding is clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake. *Id*. We review de novo the interpretation and application of court rules using the principles of statutory interpretation. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

"A motion to set aside a default or default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and a statement of facts showing a meritorious defense . . . is filed." MCR 2.603(D)(1); *Brooks Williamson & Assoc, Inc, v Mayflower Constr Co*, 308 Mich App 18, 25; 863 NW2d 333 (2014). The moving party bears the burden to demonstrate good cause and a meritorious defense. *Saffian*, 477 Mich at 14. Good cause and a meritorious defense are "separate requirements" that must not be blurred. *Shawl v Spence Bros*, 280 Mich App 213, 233; 760 NW2d 674 (2008), quoting *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). Though a party must satisfy both requirements, the trial court "should base the final result on the totality of the circumstances." *Shawl*, 280 Mich App at 237.

> To establish good cause, the moving party must demonstrate one of the following:
>
> (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand. [*Id*. at 221 (cleaned up).]

A trial court "possess[es] the inherent authority to sanction litigants and their counsel" for failure to appear at trial. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "A court, in its discretion, may dismiss a case with prejudice or enter a default judgment when a party or counsel fails to appear at a duly scheduled trial." *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995), citing MCR 2.504(B)(1) ("If a party fails to comply with these rules or a court order, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims."). However, "[o]ur legal system favors disposition of litigation on the merits." *Id*. at 507. Before imposing a "drastic" sanction such as a default or a default judgment, a trial court "is required to carefully evaluate all available options on the record and conclude that the sanction . . . is just and proper." *Id*. A trial court should also consider the following nonexhaustive list of factors before imposing the sanction of a dismissal or default judgment:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Id*.; see also *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 631; 750 NW2d 228 (2008). ]

Although trial courts may vary their process for notifying litigants of the time and date for a trial, the process employed must be reasonably calculated to give actual notice to the parties. *Vicencio*, 211 Mich App at 504–505. In this case, the trial court verified the normal procedure employed by the clerk's office when dates are input onto an order. But there was no evidence or testimony demonstrating that the September 15, 2023 order with the new trial dates was *actually* served on AEN Properties or its counsel. Further, the record does not reflect that the court or opposing counsel made any effort to contact counsel for AEN Properties on the morning of trial.

AEN Properties's failure to appear was an isolated incident in an otherwise vigorously defended case. AEN Properties submitted three affidavits attesting to the fact that no one at defense counsel's office received the September 15, 2023 order that set trial dates for January 2024. Counsel for AEN Properties further averred that he had a reasonable belief that trial would have been adjourned beyond February 28, 2024 because NBRNE filed its first-amended complaint on October 30, 2023, which meant that the close of discovery was on January 29, 2024 (90 days after the amended complaint was filed) and the deadline to file dispositive motions was February 28, 2024 (30 days after the discovery period ended).

There is no evidence that AEN Properties's absence at the trial was willful. AEN Properties did not have a history of failing to comply with the court's orders. Default is an extreme sanction reserved for "flagrant or wanton" behavior, such as repeated violations of a court order. *Swain v Morse*, 332 Mich App 510, 518-519, 957 NW2d 396 (2020). The trial court abused its discretion by failing to evaluate other available options and failing to discuss the *Vicencio* factors before choosing to enter a default judgment against AEN Properties. If AEN Properties's absence required a sanction, a lesser sanction than default judgment would have better served the interests of justice. Under these circumstances, the trial court abused its discretion by imposing the drastic sanction of default judgment.

Further, the trial court abused its discretion by finding that AEN Properties failed to establish good cause to set aside the default judgment. AEN Properties identified a substantial defect in the proceedings that resulted in the default judgment—lack of notice of the trial date. But the trial court did not make any factual findings on this issue or address any of the *Shawl* factors.

Instead, the trial court focused on whether AEN Properties established a meritorious defense. Indeed, MCR 2.603(D)(1) requires a party to demonstrate good cause and a meritorious defense before a default or default judgment may be set aside. The *Shawl* Court provided a nonexhaustive list of factors to consider when determining whether a defendant has a meritorious defense:

> (1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement;
>
> (2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or
>
> (3) the plaintiff's claim rests on evidence that is inadmissible. [*Shawl*, 280 Mich App at 238.]

-11-

In this case, the default judgment was entered as a sanction under MCR 2.504(B)(1) for failure to appear at a scheduled trial. The trial court previously denied NBRNE's request for summary disposition under MCR 2.116(I)(2) and its motion for summary disposition under MCR 2.116(C)(10) on its quiet title claim, concluding that AEN Properties had presented sufficient evidence to establish a genuine issue of material fact. In other words, AEN Properties had a meritorious defense to NBRNE's claims. In evaluating AEN Properties's motion to set aside the default judgment, the trial court did not acknowledge that it previously held that there was a material question of fact nor did it address the witness affidavits submitted by AEN Properties with its motion to set aside the default judgment. Instead, the trial court erroneously relied on the evidence and testimony that NBRNE presented at the trial *after* AEN Properties was defaulted. This was an abuse of discretion.[13]

Accordingly, we vacate the February 7, 2024 order denying AEN Properties's motion to set aside the default judgment, vacate the January 11, 2024 default judgment, and remand for the trial court to evaluate the *Vincencio* factors and determine whether a lesser sanction than default judgment would have better served the interests of justice.

Affirmed in part, vacated in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle

---

[13] AEN Properties further asserts that the trial court erred by concluding that its claims for slander of title and unjust enrichment in its second-amended counterclaim were frivolous. Because we vacate the January 11, 2024 default judgment, which included the court's judgment that these claims were frivolous, it is unnecessary for us to address this issue.