*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GJP 2018, LLC,

        Plaintiff-Appellee,

v

CHRISTOPHER THACKER,

        Defendant-Appellant,

and

REID GROUP DETROIT, LLC,

        Defendant.

UNPUBLISHED
May 11, 2026
9:42 AM

No. 373792
Wayne Circuit Court
LC No. 23-009362-CH

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant[1] appeals as of right the trial court's order denying his motion to set aside the default judgment quieting title in favor of plaintiff and issuing $500 in sanctions against defendant. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On July 24, 2023, plaintiff filed a complaint to quiet title for a property located at 13935 Chandler Park Drive, Detroit, Michigan, contending that plaintiff acquired its interest in the cited property on May 13, 2021, and defendant and Reid Group Detroit, LLC (Reid Group), had their "interest in the Property extinguished, but failed to file the appropriate paperwork." Plaintiff provided that a previous quiet title action concerning the property was dismissed for lack of progress and the property was the subject of a tax foreclosure. Plaintiff attached a notarized quit claim deed to its complaint, which provided that an entity called "S & J Houses LLC" transferred

---

[1] All references to defendant solely pertain to Christopher Thacker because Reid Group Detroit, LLC, is not involved in the present appeal.

the property to plaintiff for the consideration of one dollar on May 13, 2021. S & J Houses, LLC (S & J Houses), and Reid Group appear to be owned by the same individual named Adrian Harrison Reid. The related proof of service documents detailed that Reid Group was served by mail on July 28, 2023, at 1:56 p.m., and defendant was served personally on September 25, 2023, at 10:15 a.m., at the 36th District Courthouse.[2]

On February 20, 2024, plaintiff moved for entry of a default judgment quieting tile against defendant and Reid Group, asserting that the parties failed to file any responsive pleading despite proper service of the summons and complaint, such that the entry of the judgment was proper under MCR 2.603. Plaintiff provided that defendant and Reid Group were served a copy of the cited motion by mail, in addition to a notice of hearing. Following a hearing on March 8, 2024, the trial court entered a default judgment quieting title regarding the Chandler Park property. The court provided that defendant failed to appear at the hearing and ordered that defendant's and Reid Group's respective interests in the property were "hereby extinguished and conveyed with absolute marketable title to Plaintiff . . .and that Plaintiff is a bonafide purchaser for value and vested with the fee simple title to the Property herein described, and entitled to quiet and peaceful possession of the same." The trial court clarified that the default judgment served as a quitclaim deed of the property to plaintiff.

On August 12, 2024, defendant moved to set aside the default judgment contending that he was never notified that a quiet title action was being pursued against the subject property, and he would have attended the hearing if he was properly informed. On October 29, 2024, plaintiff responded that despite plaintiff's counsel personally serving defendant with the summons and complaint on September 25, 2023, defendant failed to participate in the proceedings until July 2024, and defendant lacked a meritorious defense because there was no recorded document establishing defendant's ownership of the property. Plaintiff further clarified that on October 1, 2020, S & J Houses deeded the subject property to Reid Group, and because the two entities were owned by the same individual, the subsequent quitclaim deed executed on May 13, 2021, transferring the property from S & J Houses to plaintiff indicated plaintiff had clear title to the property.[3] While the register of deeds provided that a land contract was recorded between Reid Group and defendant on June 26, 2023, plaintiff contended, "There is no satisfaction of land contract recorded, and more importantly, there is no deed recorded in [defendant's] favor, which would evidence his satisfaction of the land contract—and quite frankly the legitimacy of the land contract." Plaintiff additionally asserted that sanctions were warranted under MCR 2.625(A)(2)

---

[2] Plaintiff provided a transcript of the September 25, 2023 hearing during which plaintiff was purportedly served with the underlying summons and complaint; the hearing pertained to a separate eviction proceeding involving defendant and the subject property and had a start time of 10:15 a.m. While there was no explicit discussion regarding service, the parties agreed to adjourn the eviction matter related to the Chandler Park property due to the pending quiet title action and the absence of defendant's counsel.

[3] We note that a quit claim deed transferring the property from S &J Houses to Reid Group was executed on April 7, 2020, with Reid listed as the registered agent.

and MCL 600.2591 because defendant's legal position was devoid of arguable legal merit and frivolous, such that plaintiff was entitled to $2,500 in court costs and fees.

On November 14, 2024, defendant filed a brief in support of his initial motion to set aside the default judgment arguing, "Defendant in this case has good cause to set aside the default judgment for the reasons he did not receive proper notice of the pending suit, and a meritorious defense exists." Defendant further contended that he testified during a hearing held on June 18, 2024, that he did not receive the summons or complaint during the previous September 2023 hearing, despite plaintiff's counsel asserting that he served him in the courthouse hallway. Defendant additionally alleged that plaintiff was not "a bona fide purchaser" because plaintiff purchased the subject property "from a grantor who no longer held title to the property," as the execution of defendant's land contract with Reid Group on November 20, 2020, indicated that S & J Houses no longer owned the Chandler Park property. Defendant attached his affidavit, in addition to the affidavit of his partner Lakeisha Johnson, detailing that defendant was not served with any documents related to the underlying quiet title action during the September 2023 hearing. Defendant further provided copies of payment receipts allegedly for the Chandler Property land contract, but it is unclear who the recipient of the payments is.[4]

On December 6, 2024, the trial court held a hearing regarding defendant's motion to set aside the default judgment; the parties advanced arguments consistent with their respective briefs. Plaintiff's counsel asserted that even assuming defendant's land contract concerning the Chandler Park property was legitimate, "the land contract provides zero interest in the property," as defendant conceded that the land contract remained unfulfilled. Plaintiff's counsel further argued that Reid's signature on the land contract and receipts was inconsistent with other documents. Regarding service, plaintiff's counsel advanced that he personally served defendant during the September 2023 hearing. Plaintiff's counsel additionally asserted that defendant's motion was frivolous because he had no interest in the subject property, rather, he merely had "a land contract with a questionable date, a questionable notary and that was filed in June of 2023, three years after the fact."

During the motion hearing, defense counsel responded that defendant consistently participated in the previous eviction proceeding initiated in 2021, in addition to the previous quiet title action concerning the subject property. Defense counsel further contended, "But I don't see that [defendant] and Ms. Johnson's words should hold anymore—any less weight than [plaintiff's counsel] and when he says he did and they stayed that he didn't." Following the parties' arguments, the trial court opined that whether service was properly rendered was a question of credibility between the parties noting that "you also have the statement of an officer of the court in a court proceeding with a lot of concerns about a lot of other things about the background of this case and your client's claims besides the service." Defense counsel requested that the court

---

[4] We note both the land contract and payment receipts appear suspect considering the delayed filing of the land contract until after the initiation of the quiet title action, the inconsistent signature for Reid provided in the land contract when compared to the quit claim transferring the property from S & J Houses to Reid Group, and the distorted and ambiguous nature of the payment receipts.

elicit testimony from defendant and Johnson regarding service, which the trial court agreed to with the stipulation that the two be subject to cross-examination.

Defendant testified that he was only initially aware of the previous quiet title action concerning the Chandler Park property, which was dismissed, and he was first notified regarding the present matter in September 2024 after seeking clarification from the court clerk regarding the default judgment. Defendant asserted, "And my case was like how can I show up to something that I don't know nothing about? It don't make sense. It don't add up. Like everything that I have is tied into this house since I purchased this house." Defendant recalled attending a court hearing for the related eviction case in September 2023 during which the parties agreed to an adjournment, but defendant contended that he did not have any discussions nor receive any paperwork related to the second quiet title action from plaintiff's counsel. Johnson, a "friend" of defendant, testified that she was present at the September 2023 hearing, and she did not see plaintiff's counsel provide any documents to defendant nor did the parties discuss the quiet title action. Comparatively, plaintiff's counsel contended:

> We had a hearing in front of Judge Kennedy. told Judge Kennedy that we had an active case, active Circuit Court case, agreed to a stay. We walked out of the courtroom. Just outside of the courtroom I handed [defendant] a copy of the Summons and Complaint, let him know that he needed to go hire an attorney to handle this.
>
> I don't recall whether or not Ms. Johnson was there. I have no idea. I handed him the documents and that was it. [Defendant] and I had spoken on several occasions throughout our court hearings at district court and each time I told him that, one, he needed to hire an[] attorney or a new attorney. Two, he was probably going after the wrong people and he needed to sue the People that gave him this land contract if it was legit and that's it.

Neither defense counsel nor defendant requested the cross-examination or questioning of plaintiff's counsel. Following the parties' testimonies, defense counsel argued that defendant was adamant that he did not receive any documents pertaining to the underlying action, to which the trial court responded, "Counsel, you understand that I would have to find counsel's statement on the record here as an officer of the court to be intentionally false. And given the whole—the whole facts and circumstances of this case, I cannot do that." Regarding the requested sanctions, defense counsel asserted that defendant's motion to set aside the default judgment was not frivolous because defendant genuinely believed that he was not properly served, and he was "entitled or felt that he needed to be able to state his piece on the record and that this was actually not a separate lawsuit." Defense counsel further contented that defendant maintained a meritorious defense because there was not a "clear chain of title" of the subject property. Plaintiff's counsel replied, "The whole point of us filing the quiet title is because there was an error in the chain of title. The two companies that were involved were owned by the same person. I provided evidence of that . . . . We filed a claim to correct it."

The trial court then opined:

Okay. So here is the thing, [defense] counsel. I don't see, you know, enormous bad faith on your part. However, what it looks like the direction that this case would have taken, even if you at least took to heart counsel's statement as far as the service deserves something and also the time and trouble he had to take to continue this action. And so the Court is going to assess sanctions at $500. Thank you.

On December 16, 2024, the court issued an order denying defendant's motion to set aside the default judgment quieting title and awarded $500 in sanctions to plaintiff. This appeal ensued.

## II. DEFAULT JUDGMENT

Defendant argues that the trial court erroneously denied his motion to set aside the default judgment quieting title. We disagree.

"A trial court's decision regarding a motion to set aside a default judgment is reviewed for an abuse of discretion." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015). While Michigan jurisprudence generally favors resolving claims on their merits, there is a policy of honoring "properly entered" default judgments from a lower court provided that no abuse of discretion is established. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 389; 808 NW2d 511 (2011). "Where there has been a valid exercise of discretion, appellate review is sharply limited." *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999). "An abuse of discretion involves far more than a difference in judicial opinion." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 220; 760 NW2d 674 (2008) (quotation marks and citation omitted). "Rather, an abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. at 220-221 (quotation marks and citation omitted).

"The interpretation and application of a court rule involves a question of law that this Court reviews de novo." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011). "This Court reviews any factual findings underlying a trial court's decision for clear error." *Id*., citing MCR 2.613(C). "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

MCR 2.603(D)(1) dictates that "a motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed." This Court has provided that "good cause" and "a meritorious defense" are distinct elements that should be considered separately, and a party moving to set aside a default judgment must establish both. *Shawl*, 280 Mich App at 233. "Manifest injustice . . .would occur if a default were to be allowed to stand where a party has satisfied the 'meritorious defense' and 'good cause' requirements of the court rule." *Huntington Nat'l Bank*, 292 Mich App at 390.

"A party can, in relevant part, establish good cause by showing a reasonable excuse for the failure that created the default." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 295; 14 NW3d 472 (2023). As detailed in *Tolas Oil*, the following should be considered by the trial court when determining whether there is good cause to set aside a default:

whether the party completely failed to respond or simply missed the deadline; if the party simply missed the deadline, how long afterward the party filed; how long the movant took to move to set aside the default; whether there was defective process or notice; the circumstances behind the failure to file or timely file; whether the failure was knowing or intentional; the size of the judgment; whether the judgment results in ongoing liability; and whether the internal policies of the insurer were followed, if the defaulting party was an insurer.  [*Id*. at 295.]

" 'Good cause' can be shown by: (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand." *Shawl*, 280 Mich App at 221 (quotation marks and citation omitted).

On appeal, defendant contends that the trial court improperly disregarded his testimony and credited the statements of plaintiff's counsel regarding whether defendant was properly served with the summons and complaint during a hearing conducted on September 25, 2023, for a related eviction proceeding concerning defendant and the subject property.  Defendant further alleges that the court inappropriately determined that the "testimony of an attorney, as an 'officer of the court', held more weight and was inherently more credible because of their title, even when testifying as a witness for his own client and in role as process server."

A default or default judgment must be set aside if the trial court never acquired personal jurisdiction over a party.  See *Lawrence M. Clark*, *Inc v Richco Constr*, 489 Mich 265, 275; 803 NW2d 151 (2011).  Therefore, if service of process was defective, a default should be set aside. *Id*. at 274.  Under MCR 2.105(A)(1), "Process may be served on a resident or nonresident individual by . . .delivering a summons and a copy of the complaint to the defendant personally."

The trial court held a hearing concerning defendant's motion to set aside the default judgment, during which it addressed the issue of whether plaintiff properly served defendant, and it found the statements of plaintiff's counsel more credible than that of defendant and Johnson. Defendants essentially ask this Court to reach a different conclusion regarding witness credibility. We decline to do so.  When reviewing factual findings for clear error, this Court must give "particular deference to the trial court's superior position to determine witness credibility." *Miller-Davis Co v Ahrens Const*, *Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014).  Defendant has not provided any valid reason why this Court should disregard the trial court's credibility determination, and no reason to believe that the trial court's factual finding was clearly erroneous.

Although the trial court appeared to consider the status of plaintiff's counsel as an officer of the court in resolving credibility, it expressly stated that its determination was based on "the whole facts and circumstances of this case".  Moreover, the proof of service document and the time stamps reflected in the September 2023 hearing transcript corroborate counsel's representations.  Further, while the issue of service was not explicitly addressed on the record at the pertinent hearing, the parties stipulated to adjourn the related eviction matter concerning the subject property in light of the pending quiet title action and the absence of defense counsel. Defendant's participation in the prior quiet title action and the related eviction proceeding does not establish a lack of personal service in the present case.  Accordingly, defendant's contention

that this Court should disturb the trial court's credibility determination based on the evidence is unpersuasive.

Next, defendant argues that the trial court deprived him of the opportunity to cross-examine plaintiff's counsel during the December 2024 motion hearing, despite counsel offering testimony regarding the propriety of service of process, thereby violating defendant's due-process rights. Defendant did not preserve his due-process challenge in the trial court as neither defendant nor defense counsel requested the cross-examination of plaintiff's counsel. See *Tolas Oil*, 347 Mich App at 289. Regardless, defendant has not demonstrated that he was denied an opportunity to be heard.

"The federal and Michigan constitutions guarantee that the state cannot deny people 'life, liberty, or property without due process of law.' " *Kampf* v Kampf, 237 Mich App 377, 381; 603 NW2d 295 (1999), citing U.S. Const., Am. XIV and Const. 1963, art. 1, § 17. "Due process, which is similarly defined under both constitutions, specifically enforces the rights enumerated in the Bill of Rights, and it also provides for substantive and procedural due process." *Id*. (citation omitted). "Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property." *Id*. The requirements of due process do not mandate confrontation and cross-examination in every case. *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). Rather, "[d]ue process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker." *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004) (quotation marks and citation omitted). "The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence." *Id*. (quotation marks and citation omitted).

During the motion hearing, defendant, Johnson, and plaintiff's counsel each presented their respective accounts regarding whether defendant had been personally served in the September 2023 proceeding. The representations of plaintiff's counsel concerning service remained consistent throughout the lower court proceedings and were directly challenged by defendant both in his motion to set aside the default judgment and during the motion hearing. Defendant fails to demonstrate how any bar on cross-examination deprived him of due process. He was afforded a meaningful opportunity to present his position and to contest the assertions of plaintiff's counsel regarding service. In light of the foregoing, defendant has not presented a basis to set aside the default judgment.

III. SANCTIONS

Defendant argues the trial court improperly issued sanctions against him on the ground that his motion to set aside the default judgment was frivolous. We disagree.

This Court generally reviews a trial court's decision to award sanctions for a frivolous filing for an abuse of discretion. *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014). But we review any of the trial court's underlying factual findings, including a finding of frivolousness, for clear error. *Id*. at 423. "A decision is clearly erroneous where, although there

is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

In the present case, the trial court imposed sanctions pursuant to MCR 2.625(A)(2) and MCL 600.2591. MCR 2.625(A)(2) provides, "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." In turn, MCL 600.2591 states:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
>
> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.
>
> (3) As used in this section:
>
> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.
>
> (b) "Prevailing party" means a party who wins on the entire record.

These authorities "not only authorize but require a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "The purpose of imposing sanctions for asserting frivolous claims is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005) (quotation marks and citation omitted).

"To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made, and the factual determination by the trial court depends on the particular facts and circumstances of the claim involved." *DC Mex Holdings LLC v Affordable Land LLC*, 320 Mich App 528, 548; 907 NW2d 611 (2017) (quotation marks, alterations, and citation omitted). "Not every error in legal analysis constitutes a frivolous position." *Kitchen*, 465 Mich at 663. Simply because "a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." *Id*.

-8-

Defendant contests the trial court's determination that his filings constituted a frivolous legal position. However, as discussed above, the record supports the representations of plaintiff's counsel that defendant was personally served with the summons and complaint, and defendant does not contend that he failed to receive subsequent filings related to the underlying action. Moreover, the record does not establish that defendant maintained a viable interest in the subject property. See *BJ's & Sons Constr Co, Inc*, 266 Mich App at 407 ("Our review of the record reveals that the trial court correctly and properly ruled that plaintiffs had no reasonable basis for asserting their claims . . . . Indeed, discovery clearly revealed what plaintiffs and their attorney knew before filing this suit—plaintiffs had no legitimate claim to this property.") Even assuming, arguendo, that defendant's proffered land contract and payment receipts were authentic, Michigan's race-notice statute, MCL 565.29, governs priority. Plaintiff recorded its interest in the subject property approximately two years before defendant recorded his purported land contract with Reid Group, which remained unfulfilled. See *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006). Although defendant challenges the validity of the quitclaim deed transferring the subject property to plaintiff on the ground that it was executed by S & J Houses rather than Reid Group, the record reflects that both entities are operated by Reid. Plaintiff's counsel further explained that the quiet title action was initiated to resolve this discrepancy. Accordingly, the trial court correctly found defendant's filing to be frivolous and that it properly awarded sanctions.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle